**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------X

TAMEKA SIMMONS,

                              Plaintiff,

          -against-                                    Case No.: 21-cv-10367

SUCCESS ACADEMY CHARTER
SCHOOLS, INC.,

                              Defendant.

--------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Diane Windholz
Laura Victorelli

ATTORNEYS FOR DEFENDANT

# <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................2

   I.    In May 2016, Plaintiff Commenced Employment with Success Academy. ...................2

   II.   Throughout Her Employment, Plaintiff Received Lower Performance Ratings
Than the Other Accounts Payable Coordinators. ............................................2

   III.  Plaintiff Requested an Accommodation for Her Bunion and Hammertoes, as
Well as a Leave of Absence. ........................................................................3

   IV.  In October 2020, Plaintiff Was Terminated as Part of a Reorganization of Success
Academy's Controller Department...............................................................4

LEGAL STANDARD ..........................................................................................5

LEGAL ARGUMENT .........................................................................................5

   I.    Defendant is Entitled to Summary Judgment on Plaintiff's Disability Discrimination
Claims. .................................................................................................6

    A.   Plaintiff's Disparate Treatment Claim Should be Dismissed, Since She Cannot
Demonstrate that She was Terminated *Because of* her Bunion and Hammertoes............6

    B.   Plaintiff's Failure to Accommodate Claims Fail Because She Thwarted Defendant's
Attempt to Engage in the Interactive Process by Failing to Submit Her Accommodation
Request to Unum.....................................................................................10

   II.   Defendant is Entitled to Summary Judgment on Plaintiff's FMLA Interference Claim
Because Plaintiff Was Not an Eligible Employee at the Time She Was Scheduled to
Take a Leave of Absence. ..........................................................................12

   III.  Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claims Because
Her Termination Was Wholly Unrelated to Her Leave Request..................................14

CONCLUSION..................................................................................................16

## **TABLE OF AUTHORITIES**

**Case**                                                                                               **Page(s)**

Bergman v. Kids by the Bunch Too, Ltd.,
    2018 U.S. Dist. LEXIS 27119 (E.D.N.Y. Feb. 16, 2018) .............................................. 10, 11

Bryan v. Center,
    2022 U.S. Dist. LEXIS 89834 (S.D.N.Y. May 18, 2022) ..................................................... 11

Catania v. NYU Langone Health Sys.,
    2022 U.S. Dist. LEXIS 220075 (S.D.N.Y. Dec. 5, 2022) ..................................................... 12

EEOC v. Bloomberg L.P.,
    967 F. Supp. 2d 816 (S.D.N.Y. 2013) ...................................................................................... 9

Guzman v. Crothall Healthcare,
    2021 U.S. Dist. LEXIS 213777 (E.D.N.Y. Sept. 29, 2021) .................................................... 5

Johnson v. L'Oreal United States,
    2021 U.S. Dist. LEXIS 188461 (S.D.N.Y. Sept. 30, 2021) .................................................... 5

Lacey-Manarel v. Mothers Work, Inc.,
    2002 U.S. Dist. LEXIS 5541 (S.D.N.Y. Mar. 29, 2002) ...................................................... 14

Littlejohn v. City of New York,
    795 F.3d 297 (2d Cir. 2015) ..................................................................................................... 7

Logan v. Saks & Co.,
    2020 U.S. Dist. LEXIS 178126 (S.D.N.Y. Sept. 28, 2020) ............................................... 6, 7

Marseille v. Mount Sinai Health Sys.,
    2021 U.S. Dist. LEXIS 147442 (S.D.N.Y. Aug. 5, 2021) ...................................................... 5

Matias v. Montefiore Med. Ctr.,
    2022 U.S. Dist. LEXIS 172848 (S.D.N.Y. Sept. 23, 2022) .................................................. 14

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) .................................................................................................................. 6

McGuire-Welch v. House of the Good Shepherd's Tilton Sch.,
    720 Fed. App'x 58 (2d Cir. 2018) ........................................................................................... 14

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
    715 F.3d 102 (2d Cir. 2013) ................................................................................................... 15

Noel v. BNY-Mellon Corp.,
    514 Fed. App'x 9 (2d Cir. 2013) ...................................................................................... 10, 12

Payne v. Cornell Univ.,
  2022 U.S. App. LEXIS 4082 (2d Cir. Feb. 15, 2022).......................................................7, 8

Pearson v. Unification Theological Seminary,
  785 F. Supp. 3d 141 (S.D.N.Y. 2011) ................................................................................13

Peda v. N.Y. Univ. Hosps. Ctr.,
  2014 U.S. Dist. LEXIS 35261 (S.D.N.Y. Mar. 17, 2014) ....................................................16

Perez v. City of New York,
  2020 U.S. Dist. LEXIS 46906 (S.D.N.Y. Mar. 16, 2020) ......................................................9

Richards v. New York City Dep't of Educ.,
  2015 U.S. Dist. LEXIS 89949 (S.D.N.Y. July 10, 2015).....................................................12

Romanello v. Intesa Sanpaolo S.p.A.,
  97 A.D.3d 449, 949 N.Y.S. 2d 345 (N.Y. App. Div. 1st Dep't 2012)...................................10

Shimanova v. TheraCare of N.Y., Inc.,
  2017 U.S. Dist. LEXIS 35031 (S.D.N.Y. Mar. 10, 2017) .........................................13, 14, 15

Skorupska v. 525 West 52 Prop. Owner LLC, City of N.Y.,
  2022 U.S. Dist. LEXIS 158588, at *31 (S.D.N.Y. Sept. 1, 2022) ..........................................6

Uddin v. City of N.Y.,
  2009 U.S. Dist. LEXIS 133536 (S.D.N.Y. July 6, 2009)......................................................5

Vaigasi v. Solow Mgmt. Corp.,
  2017 U.S. Dist. LEXIS 37338 (S.D.N.Y. Feb. 16, 2017) ....................................................10

Warmin v. New York City Dep't of Educ.,
  2021 U.S. Dist. LEXIS 26466 (S.D.N.Y. Feb. 11, 2021) ....................................................15

**Statutes**

Americans with Disabilities Act ........................................................................................*passim*

Family Medical Leave Act .................................................................................................*passim*

New York State Human Rights Law....................................................................................*passim*

New York City Human Rights Law.....................................................................................*passim*

**Other Authorities**

29 C.F.R. § 825.216 ............................................................................................................13

29 C.F.R. § 1630.2(o)(3) ....................................................................................................10

Fed. R. Civ. P. 56(a)........................................................................................................5

Local Civil Rule 56.1 ......................................................................................................2

## PRELIMINARY STATEMENT

Plaintiff Tameka Simmons ("Plaintiff") commenced this action alleging that Defendant Success Academy Charter Schools ("Defendant") discriminated against her because of her alleged disability – i.e., bunion and hammertoes – and retaliated against her for requesting to take an eight week leave of absence related to her condition.  Plaintiff's claims are meritless and are rebutted by the evidence produced by Defendant in this case.

Plaintiff initially disclosed that she had a bunion and hammertoes to her supervisor in April 2019.  Over the next year and a half, Plaintiff mentioned the possibility of at some unspecified time taking a leave of absence related to that condition.  Throughout that period, Plaintiff never experienced any differential treatment or adverse actions related to her foot condition.  In May 2020, Defendant commenced a reorganization of its Controller Department and selected Plaintiff, who was the lowest-performing Accounts Payable Coordinator, for termination.  Plaintiff's selection for termination as part of the reorganization occurred more than a year after Plaintiff first disclosed that she had a bunion and hammertoes and before she requested a leave of absence.  Throughout her employment with Success Academy, Plaintiff was at best a mediocre employee.  She consistently received the lowest performance ratings of the employees in her position – even prior to disclosing her foot condition.  As the lowest rated employee in her position, Plaintiff was the logical choice for termination as part of the reorganization.

The timing between Plaintiff's disclosure of her foot condition in April 2019, and the termination decision over a year later in May 2020, refutes any suggestion that they are causally connected in any way.  Further, Plaintiff is unable to rebut the legitimate, non-discriminatory and non-retaliatory reason for her termination – specifically that she was the lowest rated performer in

her role.  As such, Defendant is entitled to summary judgment as a matter of law, and Plaintiff's claims must be dismissed.

## STATEMENT OF FACTS

Pursuant to Local Civil Rule 56.1, the uncontested material facts relevant to this motion are set forth in Defendant's Statement of Uncontested Facts ("DSOF").  The facts can be summarized as follows:

### I.     In May 2016, Plaintiff Commenced Employment with Success Academy.

On or about May 23, 2016, Plaintiff commenced employment with Success Academy as an Accounts Payable Coordinator ("AP Coordinator") in Defendant's Controller Department.  See DSOF at ¶ 1.  Plaintiff reported to Accounts Payable Supervisor, Shirell Holmes ("Ms. Holmes") until August 2020, when she began reporting to Success Academy's new Accounts Payable Supervisor, Tanya Jackson ("Ms. Jackson").  Id. at ¶¶ 3-4.  The Accounts Payable Supervisor reported to the Controller – a position held by Linda Fayerweather ("Ms. Fayerweather") between February 2017 and February 2019, and then Peter Wanner ("Mr. Wanner") beginning in January 2020.  Id. at ¶ 5.

### II.    Throughout Her Employment, Plaintiff Received Lower Performance Ratings Than the Other Accounts Payable Coordinators.

Plaintiff worked with two other AP Coordinators during the relevant time period – Ademola Elliott ("Ms. Elliott") and Evan Smith ("Mr. Smith").  Id. at ¶ 6.  Plaintiff, Ms. Elliott and Mr. Smith were evaluated each year by the Accounts Payable Supervisor and/or Controller. Each and every year, Ms. Elliott and Mr. Smith earned higher performance ratings than Plaintiff. Id. at ¶¶ 7, 10.   Specifically, Plaintiff's performance ratings fluctuated between "Meets Expectations" in 2017 and 2019 by Ms. Holmes; and "Below Expectations" in 2018 by Ms. Fayerweather and 2020 by Mr. Wanner.  Id. at ¶ 8.  Conversely, in 2018, Ms. Fayerweather

evaluated Mr. Smith's[1] performance as "Exceeds Expectations"; in 2019, Ms. Holmes evaluated Ms. Elliott's and Mr. Smith's performance as "Exceeds Expectations"; and in 2020, Mr. Wanner evaluated Ms. Elliott's and Mr. Smith's performance as "Meets Expectations." Id. at ¶ 10.

In addition to her mediocre performance reviews, Plaintiff was given critical feedback on her performance. Ms. Holmes and Ms. Fayerweather specifically directed, among other things, that Plaintiff focus on her role and related responsibilities; improve her attendance; communicate with her supervisors and other Finance Department employees; enhance communications with other departments; and take on duties outside of her day-to-day responsibilities. Id. at ¶ 9.

## III. Plaintiff Requested an Accommodation for Her Bunion and Hammertoes, as Well as a Leave of Absence.

In or around April 2019, Plaintiff began seeking treatment for her bunion and hammertoes. Id. at ¶ 11. Sometime after seeking treatment, Plaintiff informed Ms. Holmes that she was considering taking a leave of absence in the nondescript future to have bilateral foot surgery for her condition. Id. at ¶ 12. In February 2020, while still considering whether she would undergo surgery, Plaintiff submitted a doctor's note to Success Academy's Human Capital Department, stating that she needed an accommodation to wear sneakers. Id. at ¶ 13. Director of Benefits, Tiffany Duncan ("Ms. Duncan") informed Plaintiff that all accommodation requests needed to be submitted through Success Academy's third-party leave and disability administrator, Unum. Id. at ¶ 14. Inexplicably, Plaintiff never submitted the request. Id. at ¶ 15. Less than one month later, due to the Covid-19 pandemic, Success Academy switched to fully remote work, thus rendering unnecessary Plaintiff's request to wear sneakers in the office. Id. at ¶ 16.

---

[1] Ms. Elliott began working at Success Academy in late 2018 and therefore did not receive a 2018 performance review.

Although Plaintiff's surgery had not yet been scheduled by March 2020, she informed Ms. Holmes that her surgery would be postponed, since her doctor was not performing "elective surgeries" during the Covid-19 pandemic.  Id. at ¶¶ 17-18.  In fact, it was not until September 2020 that Plaintiff was able to schedule her surgery, at which point she informed Ms. Jackson that she would need to take a leave of absence from October 16, 2020 through December 16, 2020 for her recovery.  Id. at ¶ 19.  On September 11, 2020, Plaintiff completed FMLA paperwork and submitted it through Unum.  Id. at ¶ 20.  However, on October 12, 2020, Unum informed Plaintiff that, due to her termination on October 1, 2020, it could no longer process Plaintiff's leave request.  Id. at ¶ 21.

**IV.    In October 2020, Plaintiff Was Terminated as Part of a Reorganization of Success Academy's Controller Department.**

In April 2020 – five months prior to Plaintiff scheduling her bunion and hammertoes surgery – Defendant began working on a plan to reorganize the Controller Department.  Id. at ¶ 22.  As part of this reorganization, Success Academy upgraded the Assistant Controller role to include accounts payable responsibilities, and eliminated one of the three AP Coordinator positions.  Id. at ¶ 23.  To determine which AP Coordinator would be selected for termination as part of the reorganization, Mr. Wanner conducted his own, independent performance assessment for each AP Coordinator and reviewed their prior performance evaluations.  Id. at ¶ 24.

In May 2020, Mr. Wanner prepared a report regarding the reorganization, which included a summary of each employee's performance and, consistent with the ratings previously issued by Ms. Holmes and Ms. Fayerweather, identified Plaintiff as the lowest-performing AP Coordinator in the Department.  Id. at ¶¶ 25-26.  Based on the information in this report, Mr. Wanner determined that Plaintiff – as the lowest-performing AP Coordinator – would be

terminated at a later date.  Id. at ¶ 27.  Therefore, on October 1, 2020, Plaintiff – as the lowest-performing AP Coordinator – was terminated as part of the Controller Department reorganization. Id. at ¶ 28.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); see Marseille v. Mount Sinai Health Sys., 2021 U.S. Dist. LEXIS 147442, at *8 (S.D.N.Y. Aug. 5, 2021).  "No genuine issue exists 'unless there is sufficient evidence favoring the nonmoving party.'"  Guzman v. Crothall Healthcare, 2021 U.S. Dist. LEXIS 213777, at *14 (E.D.N.Y. Sept. 29, 2021) (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986)).  Importantly, "the non-moving party may not rely on conclusory allegations or unsubstantiated speculation, but rather, must present significant probative evidence tending to support the complaint."  Uddin v. City of N.Y., 2009 U.S. Dist. LEXIS 133536, at *22 (S.D.N.Y. July 6, 2009) (internal quotations and citations omitted).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id.  Finally, "[w]here no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted."  Johnson v. L'Oreal United States, 2021 U.S. Dist. LEXIS 188461, at *29 (S.D.N.Y. Sept. 30, 2021) (quoting Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011)).

## LEGAL ARGUMENT

Plaintiff alleges that Defendant terminated her and denied her accommodation request in violation of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").  Plaintiff

also claims that Defendant interfered with her rights and retaliated against her in violation of the Family Medical Leave Act ("FMLA").

Plaintiff's disability discrimination claims fail as a matter of law.  As set forth in detail below, Plaintiff failed to produce any evidence demonstrating that Defendant held a discriminatory animus against her because of her bunion and hammertoes or that she was terminated because of her condition.  Further, the indisputable evidence in this case demonstrates that Plaintiff never formally submitted her accommodation request and that she in fact caused a breakdown in the interactive process.  Plaintiff's FMLA claims also fail because she was not an eligible employee at the time she planned to exercise her rights under that statute, and was terminated for legitimate, non-retaliatory reasons – i.e., the reorganization of Success Academy's Controller Department.  Therefore, each of Plaintiff's claims should be dismissed.

## I.   Defendant is Entitled to Summary Judgment on Plaintiff's Disability Discrimination Claims.

A plaintiff alleging discrimination under the ADA, NYSHRL and NYCHRL can bring claims under three different theories: (1) disparate treatment; (2) disparate impact; and (3) failure to accommodate.  See Skorupska v. 525 West 52 Prop. Owner LLC, City of N.Y., 2022 U.S. Dist. LEXIS 158588, at *31 (S.D.N.Y. Sept. 1, 2022).  Plaintiff appears to bring claims under the disparate treatment and failure to accommodate theories, each of which fail as a matter of law.

### A.   Plaintiff's Disparate Treatment Claim Should be Dismissed, Since She Cannot Demonstrate that She was Terminated *Because of* her Bunion and Hammertoes.

Disparate treatment claims under the ADA, NYSHRL and NYCHRL are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See Logan v. Saks & Co., 2020 U.S. Dist. LEXIS 178126, at *15 (S.D.N.Y. Sept. 28, 2020); Payne v. Cornell Univ., 2022 U.S. App. LEXIS 4082, at *5 (2d Cir. Feb. 15,

2022).  Under this framework, Plaintiff must first establish a *prima facie* case by showing that: "(1) [Success Academy] is subject to the [statutes]; (2) [s]he was disabled within the meaning of the [statutes]; (3) [s]he was otherwise qualified to perform the essential functions of her job; and (4) [s]he suffered an adverse employment decision because of h[er] disability."  Id.

If Plaintiff is able to establish a *prima facie* case of discrimination, the burden shifts to Success Academy to articulate a legitimate, nondiscriminatory reason for her termination. Payne, 2022 U.S. App. LEXIS 4082, at *5.  After Success Academy proffers its legitimate, nondiscriminatory reason, the burden shifts back to Plaintiff to demonstrate that the reason is "pretext" for discrimination.  Id.  To prevail under the ADA and NYSHRL, Plaintiff must demonstrate that her disability was the "but-for" cause of her termination.  Id. at *6.  Under the NYCHRL, Plaintiff must produce evidence showing that Defendant "treated her less well, at least in part, for a discriminatory reason."  Logan, 2020 U.S. Dist. LEXIS 178126, at *15.

Plaintiff is unable to establish the fourth element of the *prima facie* case, as she cannot show that she was terminated ***because of*** her disability.  Plaintiff fails to identify any "criticism of her performance in [] degrading terms; . . . invidious comments about others in her protected group; [] more favorable treatment of employees not in the protected group" or any other circumstances that would lead one to believe Success Academy employees harbored any discriminatory animus towards her because of her foot condition.  See Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015).  Instead, Plaintiff baldly asserts that Defendant "terminate[ed] Plaintiff because of her disability."  See Dkt. No. 17 at ¶¶ 33-34.

Plaintiff's conclusory assertion, alone, is insufficient to establish that her termination was causally connected to her disability in any way.  Indeed, the timing between the disclosure of Plaintiff's disability around April 2019 and the decision to terminate her employment

over a year later in May 2020, belies any suggestion that Defendant held any discriminatory animus towards Plaintiff because of her disability.  It is nonsensical to suggest that Success Academy would suddenly develop some sort of vague discriminatory animus against Plaintiff because of her bunions and hammertoes ***more than a year after she disclosed them*** to her supervisors.  See Payne, 2022 U.S. App. LEXIS 4082, at *7-8 (dismissing the plaintiff's disparate treatment claims because the employer "had valid business justifications for both [adverse employment actions] and both occurred ***well after the disclosure of her disability***.") (emphasis added).

Further, even if Plaintiff could establish a *prima facie* case of discrimination, she cannot rebut Defendant's legitimate, non-discriminatory reason for her termination – i.e., the elimination of her position as the lowest-performing AP Coordinator at the time of the Controller Department reorganization.  As explained above, Defendant began a reorganization of the Controller Department in April 2020 and made the decision to eliminate the lowest-performing AP Coordinator.  See DSOF at ¶ 22.  Plaintiff consistently received the lowest performance rating of the three AP Coordinators throughout her employment.  Significantly, Plaintiff was the lowest rated AP Coordinator even ***before*** she ever disclosed to her supervisors that she suffered from bunions and hammertoes.  Id. at ¶¶ 8-10.  Indeed, before ever disclosing her condition, Plaintiff received detailed constructive criticism from her supervisors on, among other things, her attendance, communication and failure to take initiative by performing duties outside of her day-to-day duties.  Id. at ¶ 9.

Conversely, the other two AP Coordinators, Ms. Elliott and Mr. Smith, received favorable feedback on their performance.  For example, in Ms. Elliott's 2020 performance review, Ms. Holmes noted that she "has a committed work ethic [and] drives herself and her team which also shows leadership."  See Windholz Aff. at Exhibit H, D000215.  Ms. Holmes also noted that

Ms. Elliott "is a critical thinker which is displayed in [] weekly meeting[s] of problem-solving." Id. Mr. Smith's evaluations were even more complimentary of his leadership and overall performance. In Mr. Smith's 2020 performance review, Ms. Holmes noted that he "has met every goal and meets expectations by being solution oriented on every task." See Windholz Aff. at Exhibit I, D000209. She further stated that "[k]eeping a positive attitude and demonstrate[ing] leadership . . . Evan has consistently demonstrated high performance by maintaining great quality work and assisting with functions within the Finance department such as learning and exciting the payroll associate position." Id. at D000211.

These reviews, as well as Mr. Wanner's independent observations in the May 2020 reorganization report, demonstrate that Plaintiff was consistently ranked as the lowest-performing AP Coordinator and was thus the logical choice for termination as part of the reorganization efforts. Where, as here, Plaintiff has been subject to counselling and performance management *before* she disclosed her foot condition, she is unable to rebut Defendant's legitimate, non-discriminatory reason for her termination. See, e.g., Perez v. City of New York, 2020 U.S. Dist. LEXIS 46906, at *44 (S.D.N.Y. Mar. 16, 2020) (dismissing the plaintiff's disability claims where he was subject to progressive counseling before filing a reasonable accommodation request); EEOC v. Bloomberg L.P., 967 F. Supp. 2d 816, 858 (S.D.N.Y. 2013) (dismissing the plaintiff's discrimination claims where the plaintiff's prior performance reviews foresaw at least some problems with her performance).

\*       \*       \*

Plaintiff's inability to proffer any admissible evidence demonstrating that she was terminated because of her disability or rebutting Defendant's legitimate non-discriminatory reason for her termination warrants dismissal of her disparate treatment claims.

**B.**      **Plaintiff's Failure to Accommodate Claims Fail Because She Thwarted Defendant's Attempt to Engage in the Interactive Process by Failing to Submit Her Accommodation Request to Unum.**

Plaintiff also claims that Defendant improperly denied her accommodation request to wear sneakers in the office.  To establish a *prima facie* case of failure to accommodate under the ADA, NYSHRL and NYCHRL, Plaintiff must demonstrate that "(1) Plaintiff is a person with a disability under the meaning of the statute; (2) [Success Academy] had notice of h[er] disability; (3) with reasonable accommodation, [P]laintiff could perform the essential functions of the job at issue; and (4) [Success Academy] refused to make such accommodations."  Vaigasi v. Solow Mgmt. Corp., 2017 U.S. Dist. LEXIS 37338, at *16-17 (S.D.N.Y. Feb. 16, 2017) (internal quotations and citations omitted).  Plaintiff once again fails to establish the fourth element of the *prima facie* case because Defendant never refused Plaintiff's accommodation.

Under the ADA, NYSHRL and NYCHRL, "both the employee and the employer must engage in an 'interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'"  Noel v. BNY-Mellon Corp., 514 Fed. App'x 9, 10 (2d Cir. 2013) (quoting 29 C.F.R. § 1630.2(o)(3)).  Importantly, "[p]articipation in this interactive process is required to sustain a failure to accommodate claim."  Bergman v. Kids by the Bunch Too, Ltd., 2018 U.S. Dist. LEXIS 27119, at *21 (E.D.N.Y. Feb. 16, 2018) (ADA and NYSHRL); Romanello v. Intesa Sanpaolo S.p.A., 97 A.D.3d 449, 451, 949 N.Y.S. 2d 345 (N.Y. App. Div. 1st Dep't 2012) (NYSHRL and NYCHRL).

Plaintiff cannot show that Success Academy refused to accommodate her request to wear sneakers because it was Plaintiff – not Success Academy – that caused a breakdown in this interactive process.  Specifically, Plaintiff initially submitted her medical documentation to Ms. Duncan, who informed Plaintiff that all accommodation requests needed to be submitted through

Success Academy's third-party leave and disability administrator, Unum.  See DSOF at ¶ 14.  In doing so, Ms. Duncan attempted to initiate the interactive process with Plaintiff by referring her to Unum to engage in that process.  Despite this clear direction from Ms. Duncan, Plaintiff failed to engage in the interactive process with Defendant or Unum and simply never followed up on her request.  Throughout this litigation, and indeed, even on the face of her Complaint and First Amended Complaint, Plaintiff acknowledged that she never submitted a doctor's note through Unum supporting her request to wear sneakers.  See Dkt. No. 17 at ¶ 15; DSOF at ¶ 15.

        Although Plaintiff describes the interactive process with Unum as a "complicated and time-consuming process," she fails to indicate that she ever even attempted to submit her documentation through Unum and freely admitted during her deposition that she did not know the extent of Unum's process or what would have been required of her had she submitted the note. See Windholz Aff. at Exhibit A, 230: 4-24.  Where, as here, it is the plaintiff who abandons the interactive process, he or she cannot recover on a failure to accommodate claim.  See, e.g., Bryan v. Center, 2022 U.S. Dist. LEXIS 89834, at *37 (S.D.N.Y. May 18, 2022) (dismissing the plaintiff's failure to accommodate claim where he cut off the interactive process by declining to submit any documentation); Julius Dep't of Human Res. Admin., 2010 U.S. Dist. LEXIS 33259, at *29 (S.D.N.Y. Mar. 24, 2010) (dismissing the plaintiff's ADA and NYCHRL failure to accommodate claims where the plaintiff failed to follow up on her initial accommodation request with additional documentation as required by the employer); Bergman, 2018 U.S. Dist. LEXIS 27119, at *21; Noel, 2011 U.S. Dist. LEXIS 115828, at *6 (dismissing the plaintiff's failure to accommodate claims where no one at her employer refused her accommodation request, and she failed to follow up on her initial request).

Finally, Plaintiff's request for an accommodation became moot just one month after she initiated the request, since she was permitted to work remotely due to the Covid-19 pandemic beginning in March 2020 and could wear sneakers or any other type of shoe she desired at home. See Richards v. New York City Dep't of Educ., 2015 U.S. Dist. LEXIS 89949, at *38-29 (S.D.N.Y. July 10, 2015) (granting summary judgment on the plaintiff's failure to accommodate claims where she was permanently assigned to a different location – thus mooting her request to work in a specific room in her former location).

*       *       *

Due to Plaintiff's failure to even attempt to submit her note to Unum and the fact that she no longer needed an accommodation as of March 2020, her failure to accommodate claims must be dismissed.

II.    **Defendant is Entitled to Summary Judgment on Plaintiff's FMLA Interference Claim Because Plaintiff Was Not an Eligible Employee at the Time She Was Scheduled to Take a Leave of Absence.**

The Second Circuit recognizes two types of claims under the FMLA – interference and retaliation. Catania v. NYU Langone Health Sys., 2022 U.S. Dist. LEXIS 220075, at *13 (S.D.N.Y. Dec. 5, 2022). "[A]n employee brings an 'interference' claim when her employer has prevented or otherwise impeded [her] ability to exercise rights under the FMLA," while "'[r]etaliation' claims . . . involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer." Id. at *13-14 (quoting Woods v. START Treatment & Recovery Ctrs., Inc., 864 F.3d 158, 166, 168 (2d Cir. 2017)). Plaintiff brings both an interference claim and retaliation claim in the present litigation, alleging that she was prevented from taking a leave of absence under

the FMLA and that she was retaliated against for initiating the leave process.  As explained in detail below, each of Plaintiff's claims fail as a matter of law.

To prevail on an FMLA interference claim, a plaintiff must establish that: "(1) she is an eligible employee under the FMLA; (2) the defendant is an employer as defined by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she gave notice to the defendant of her intention to take leave; and (5) she was denied benefits to which she was entitled under the FMLA."  Shimanova v. TheraCare of N.Y., Inc., 2017 U.S. Dist. LEXIS 35031, at *18-19 (S.D.N.Y. Mar. 10, 2017).

Plaintiff cannot establish the third and fifth elements of the *prima facie* case of FMLA interference because she was not an eligible employee under the statute and was thus not entitled to take FMLA leave.  The FMLA regulations specifically provide that "[i]f an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off . . ."  29 C.F.R. § 825.216.  It is therefore "well-settled that an employer is not liable for 'interfering' with an employee's leave when the employee would have been terminated regardless of the leave."  Pearson v. Unification Theological Seminary, 785 F. Supp. 3d 141, 162 (S.D.N.Y. 2011).

The evidence clearly demonstrates that Plaintiff was terminated as part of the Controller Department reorganization on October 1, 2020 – more than two weeks ***prior*** to her scheduled surgery and planned FMLA leave.  Further, the decision to terminate Plaintiff's employment was made even earlier – in May 2020 – before she even scheduled her surgery.  Since Plaintiff was terminated prior to the commencement of her leave, she was not entitled to such leave, and her FMLA interference claim must be dismissed.  See, e.g., Shimanova, 2017 U.S. Dist.

LEXIS 35031, at *19-20 (granting the defendant's motion for summary judgment on the plaintiff's FMLA interference claim where "the undisputed facts show[ed] that [her] position was eliminated, that she never applied for a new position with [the defendant], and that" the defendant terminated her employment the day after she commenced her leave of absence); Matias v. Montefiore Med. Ctr., 2022 U.S. Dist. LEXIS 172848, at *28 (S.D.N.Y. Sept. 23, 2022) (dismissing the plaintiff's FMLA interference claim where the plaintiff's termination "occurred before her requested FMLA leave was scheduled to begin."); Lacey-Manarel v. Mothers Work, Inc., 2002 U.S. Dist. LEXIS 5541, at *2 (S.D.N.Y. Mar. 29, 2002) (dismissing the plaintiff's FMLA interference claim, since her "leave did not entitle her to immunity from the personnel changes that were occurring at [her employer] as a result of its reorganization.").

*      *      *

Since Plaintiff was not an "eligible employee" under the FMLA at the time she was scheduled to commence her leave of absence, her FMLA interference claim must be dismissed.

**III.   Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claims Because Her Termination Was Wholly Unrelated to Her Leave Request.**

Plaintiff asserts claims for retaliation under the ADA, NYSHRL, NYCHRL and FMLA.  Specifically, Plaintiff alleges that Defendant "terminat[ed] [her] because of her request for the reasonable accommodation of short-term leave."

To establish a *prima facie* case of retaliation under the ADA and NYSHRL, Plaintiff must demonstrate that (1) she engaged in protected activity; (2) of which Success Academy was aware; (3) that she suffered an adverse employment action; and (4) that there was a causal connection between the adverse employment action and her protected activity.  McGuire-Welch v. House of the Good Shepherd's Tilton Sch., 720 Fed. App'x 58, 62 (2d Cir. 2018).  Under the NYCHRL, Plaintiff must show that she "took an action opposing [Success Academy's]

14

discrimination, and that, as a result, [Success Academy] engaged in conduct that was reasonably likely to deter a person from engaging in such conduct." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013).

Similarly, to establish a *prima facie* case of FMLA retaliation, Plaintiff must demonstrate that: "(1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Shimanova, 2017 U.S. Dist. LEXIS 35031, at *20-21.

Each of Plaintiff's retaliation claims fail as a matter of law because she cannot demonstrate that her termination is causally connected to her leave request in any way. Specifically, the timing between Plaintiff's request for leave and her termination rebuts the assertion that they are causally connected.

Although Plaintiff hinted for more than a year and half that she might take a leave of absence, she did not formally request leave until September 2020. See DSOF at ¶¶ 19-20. The irrefutable evidence demonstrates that in May 2020, ***four months before Plaintiff requested leave***, Mr. Wanner decided to terminate the lowest performing AP Coordinator (i.e., Plaintiff). Since the decision to terminate Plaintiff's employment was made ***before*** she ever formally requested a leave of absence, she cannot demonstrate that it was based on any retaliatory motive. See Warmin v. New York City Dep't of Educ., 2021 U.S. Dist. LEXIS 26466, at *25-26 (S.D.N.Y. Feb. 11, 2021) (granting the employer summary judgment on the plaintiff's ADA, NYSHRL and NYCHRL claims where the termination decision was made prior to the plaintiff requesting an accommodation); Peda v. N.Y. Univ. Hosps. Ctr., 2014 U.S. Dist. LEXIS 35261, at *23-25 (S.D.N.Y. Mar. 17, 2014) (dismissing the plaintiff's FMLA and NYCHRL retaliation claims

where the decision to terminate her was "made well before she ever made the [accommodation] requests.").

Further, as explained above, Plaintiff cannot rebut Defendant's legitimate, non-retaliatory reason for her termination – i.e., her selection for termination as the lowest-performing AP Coordinator on the team.  As such, Plaintiff's retaliation claims must be dismissed.

## **CONCLUSION**

Based on the foregoing, Defendant respectfully requests that the Court dismiss Plaintiff's claims with prejudice; and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.

Dated: January 30, 2023                    By:    */s Diane Windholz*
       New York, New York                         Diane Windholz
                                                   Laura Victorelli

ATTORNEYS FOR DEFENDANT

4854-5506-3118, v. 1

16