UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

TAMEKA SIMMONS,

                             Plaintiff,

           -against-
                                      Case No.: 21-cv-10367 (ER)

SUCCESS ACADEMY CHARTER
SCHOOLS, INC.,

                             Defendant.
------------------------------------------------------------------------X

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Diane Windholz
Laura Victorelli

ATTORNEYS FOR DEFENDANT

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

    I.   Plaintiff Fails to Raise a Genuine Issue of Material Fact Regarding Her Performance Ratings and Termination. ............................................................................................ 1

        A.  The Irrefutable Evidence Demonstrates that for Several Years, *All* of Plaintiff's Supervisors Identified Plaintiff as the Lowest-Performing Accounts Payable Coordinator. ................................................................................................... 2

        B.  Plaintiff's October 1, 2020 Termination is Consistent with the Controller Department Reorganization Document Prepared in April 2020. ....................... 3

    II.  Defendant is Entitled to Summary Judgment on Plaintiff's Disparate Treatment and Retaliation Claims Because Plaintiff's Termination Was Wholly Unrelated to Her Leave Request. ..................................................................................................................... 4

        A.  The Timing of Plaintiff's Termination Does Not Create an Inference of Discriminatory or Retaliatory Animus. ......................................................... 5

        B.  Ms. Holmes and Mr. Capani's Terminations Do Not Give Rise to an Inference of Discriminatory or Retaliatory Intent and are Entirely Unrelated to Plaintiff's Own Requested FMLA Leave. ...................................................................... 8

    III.  Defendant is Entitled to Summary Judgment on Plaintiff's FMLA Interference Claim Because She Was Not an Eligible Employee Under that Statute. ..................... 9

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

Delaney v. Bank of Am. Corp.,
    908 F. Supp. 2d 498 (S.D.N.Y. 2012).......................................................................................9

Ferguson v. Lander Co.,
    2008 U.S. Dist. LEXIS 26738 (N.D.N.Y Apr. 8, 2008)............................................................8

Hall v. Urban Assembly, Inc.,
    2022 U.S. Dist. LEXIS 314 (S.D.N.Y. Jan 3, 2022)..................................................................7

Hollington v. CDM Fed. Programs Corp.,
    2023 U.S. Dist. LEXIS 40887 (S.D.N.Y. Mar. 10, 2023) ........................................................6

Lacey-Manarel v. Mothers Work, Inc.,
    2002 U.S. Dist. LEXIS 5541 (S.D.N.Y. Mar. 29, 2002) ........................................................10

Matias v. Montefiore Med. Ctr.,
    2022 U.S. Dist. LEXIS 172848 (S.D.N.Y. Sept. 23, 2022).....................................................10

Morales v. City of New York,
    2022 U.S. App. LEXIS 20112 (2d Cir. July 21, 2022)..............................................................7

Price v. Cushman & Wakefield, Inc.,
    808 F. Supp. 2d 670 (S.D.N.Y. 2011).......................................................................................1

Shimanova v. TheraCare of N.Y., Inc.,
    2017 U.S. Dist. LEXIS 35031 (S.D.N.Y. Mar. 10, 2017) ......................................................10

**Statutes**

Family Medical Leave Act................................................................................................ *passim*

**Rules**

Federal Rule of Civil Procedure 56 ................................................................................................1

**PRELIMINARY STATEMENT**

The irrefutable evidence in this case demonstrates that Plaintiff Tameka Simmons was terminated from her employment as part of a department-wide reorganization, after being consistently identified as Success Academy's lowest-performing AP Coordinator for more than three years. In an attempt to rebut this plainly legitimate, nondiscriminatory and non-retaliatory reason for her termination, Plaintiff mischaracterizes deposition testimony and documents produced in this case to create issues of fact where none exist – specifically with regard to Plaintiff's 2020 performance rating and the timing of her termination. Plaintiff's efforts are futile, since there is no question that Plaintiff was regarded by each of her supervisors over the last three years as the lowest-performing AP Coordinator, even prior to disclosing her potential FMLA leave. Further, the timing of Plaintiff's termination was consistent with the reorganization plan developed by Success Academy Controller, Peter Wanner in April 2020 – five months before Plaintiff officially requested a leave of absence related to her bunion and hammertoe. Plaintiff fails to produce any evidence which would indicate that her termination was in any way related to her requested leave. As such, Defendant is entitled to summary judgment.

**ARGUMENT**

**I.      Plaintiff Fails to Raise a Genuine Issue of Material Fact Regarding Her Performance Ratings and Termination.**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In order "to show that there is a material fact for trial, the nonmoving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present *affirmative* and *specific* evidence showing that there is a genuine issue for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011) (emphasis added).

1

In an attempt to create an issue of fact around Defendant's legitimate, non-discriminatory and non-retaliatory reason for Plaintiff's termination (i.e., Plaintiff's selection for termination as the lowest-performing AP Coordinator on the Accounts Payable team), Plaintiff asserts that: 1) Peter Wanner "directed" Ms. Holmes to issue Plaintiff a "Below Expectations" rating on her 2020 performance review; and 2) Plaintiff was terminated prior to Success Academy filling the vacant Payroll Associate position, which she claims was a prerequisite to her termination under the reorganization plan.  As explained below, these assertions are false and belied by the evidence produced in this case.

### A. The Irrefutable Evidence Demonstrates that for Several Years, *All* of Plaintiff's Supervisors Identified Plaintiff as the Lowest-Performing Accounts Payable Coordinator.

As demonstrated by the chart below, for several years *all* of Plaintiff's supervisors, including Shirell Holmes, Linda Fayerweather and Mr. Wanner, *consistently* rated Plaintiff as the lowest-performing AP Coordinator, even prior to Plaintiff ever mentioning her potential bunion and hammertoe surgery in 2019. See DSOF at ¶ 10.

|      | PLAINTIFF | EVAN SMITH | ADEMOLA ELLIOTT |
|------|-----------|------------|-----------------|
| 2018 | Below Expectations | Exceeds Expectations | N/A – Pre-Hire |
| 2019 | Meets Expectations | Exceeds Expectations | Exceeds Expectations |
| 2020 | Below Expectations | Meets Expectations | Meets Expectations |

Plaintiff attempts to create an issue of fact regarding these long-standing performance ratings first by quoting from job references submitted by Defendant's former Director of Payroll, Antwane McCoy and Plaintiff's fellow AP Coordinator, Ademola Elliott to Plaintiff's prospective subsequent employers.  While these references highlight Plaintiff's strengths in an effort to assist Plaintiff in obtaining employment *after* her termination from Success Academy, they are nevertheless insufficient to rebut the clear evidence in this case that Plaintiff's numerous supervisors *during* her employment consistently identified her as the lowest-performing AP

Coordinator. Although Plaintiff performed well in certain aspects of her role, she simply did not perform to the same level as her fellow AP Coordinators, Ms. Elliott and Evan Smith. In fact, although Plaintiff asserts that she helped train Ms. Elliott and Mr. Smith, who were both hired after her, both Ms. Elliott and Mr. Smith quickly surpassed Plaintiff's performance as reflected in their higher performance ratings in each year that all three were evaluated.

Plaintiff further attempts to create an issue of fact by arguing that Mr. Wanner "directed" Ms. Holmes to give Plaintiff a "Below Expectations" rating on her 2020 performance review. This is untrue, however, and is a blatant mischaracterization of Mr. Wanner and Ms. Holmes' deposition testimony. Specifically, Mr. Wanner described a "calibration" meeting with Ms. Holmes regarding the 2020 ratings, after observing each employee's performance throughout his first four months working at Success Academy. See Reply DSOF at ¶ 8. Consistent with this testimony, Ms. Holmes testified that she and Mr. Wanner had a conversation regarding the ratings for Plaintiff, Mr. Smith and Ms. Elliot, and that she believed *all* three AP Coordinators, including Mr. Smith and Ms. Elliot, should have received higher ratings prior to this calibration discussion. Id. By Ms. Holmes' assessment, therefore, Plaintiff should have received a "Meets Expectations," and Mr. Smith and Ms. Elliott should have received an "Exceeds Expectations" on their 2020 performance reviews. As such, even without the calibration, Ms. Holmes still identified Plaintiff as the lowest-performing AP Coordinator – consistent with all of Plaintiff's prior performance ratings.

Since Plaintiff's supervisors consistently identified her as the poorest performing AP Coordinator, there is no issue of fact that Plaintiff was the logical choice for termination.

    **B.**    **Plaintiff's October 1, 2020 Termination is Consistent with the Controller Department Reorganization Document Prepared in April 2020.**

3

Plaintiff also attempts to create an issue of fact regarding the timing of her termination. At the time Mr. Wanner prepared the Controller Department reorganization document in April 2020, Mr. Smith was splitting his time between two functions – payroll and accounts payable. See Wanner Decl. at ¶ 6. The reorganization document stated that, once the payroll position was filled, Mr. Smith could move back to performing 100% of his accounts payable work – thus allowing Success Academy to release the lowest-performing AP Coordinator (i.e., Plaintiff). See Windholz Aff. Exhibit L at D000054-D000055. Plaintiff now relies *solely* on this statement to erroneously assert that she could *only* be terminated once Success Academy filled this job.

Plaintiff's logic is flawed, however, since the reorganization document specifically conditioned Plaintiff's termination, *not* on Success Academy filling the vacant Payroll Associate position, but rather on Mr. Smith returning to performing 100% of his accounts payable work. See Reply DSOF at ¶ 23. As explained in Defendant's Reply DSOF, Mr. Smith returned to performing 100% of his accounts payable duties by Autumn 2020 – around the same time of Plaintiff's termination on October 1, 2020. Id. Therefore, whether or not the payroll position was filled at the time of Plaintiff's termination is immaterial. In any event, Plaintiff's contention that Success Academy did not fill the open Payroll Associate position until August 2021 is inaccurate. Rather, the open Payroll Associate role was filled on November 4, 2020 – just one month after Plaintiff's termination. See Wanner Decl. at ¶¶ 8-10. The timing of Plaintiff's termination is therefore entirely consistent with the reorganization document created by Mr. Wanner in April 2020.

## II. Defendant is Entitled to Summary Judgment on Plaintiff's Disparate Treatment and Retaliation Claims Because Plaintiff's Termination Was Wholly Unrelated to Her Leave Request.

As Plaintiff notes in her Opposition Brief, each of her disparate treatment and retaliation claims revolve around one central question: whether Defendant terminated Plaintiff *because of*

4

her request to take FMLA leave related to her bunions and hammertoe. Plaintiff argues that the timing of her termination, as well as the protected activity of the other individuals selected for termination, demonstrate that her termination was causally connected to her leave request. Plaintiff's arguments lack factual bases and fail as a matter of law.

> A. **The Timing of Plaintiff's Termination Does Not Create an Inference of Discriminatory or Retaliatory Animus.**

Plaintiff first attempts to argue that the timing of her termination is somehow indicative of discrimination and retaliation because Plaintiff was initially selected for termination in April 2020 – four months after Mr. Wanner initially learned of her potential (yet still unscheduled) leave in January 2020. Specifically, Plaintiff seems to argue that, after learning of Plaintiff's potential surgery, Mr. Wanner falsely identified Plaintiff as the lowest-performing AP Coordinator who should be terminated as part of the Controller Department reorganization and then conspiratorially directed Ms. Holmes to issue Plaintiff a poor performance rating.

Plaintiff's argument is absurd and entirely ignores the fact that Plaintiff's prior two supervisors *consistently* identified her as the lowest-performing AP Coordinator for *years* prior to Mr. Wanner even commencing employment at Success Academy or Plaintiff requesting a leave of absence. As explained above, Ms. Holmes, on her own volition, identified Plaintiff as the lowest-performing AP Coordinator in Plaintiff's 2020 performance review – even prior to the calibration discussion with Mr. Wanner later that spring. Mr. Wanner's observations were simply consistent with these earlier reviews, which identified Plaintiff as the weakest performer on the AP Coordinator team. Additionally, the four-month gap between Mr. Wanner learning of Plaintiff's potential leave and then selecting her for termination in April 2020 belies any causal connection

related to her potential surgery.[1]  Hollington v. CDM Fed. Programs Corp., 2023 U.S. Dist. LEXIS 40887, at *29-30 (S.D.N.Y. Mar. 10, 2023) (Ramos, J.) (collecting cases) ("While there is no firm outer limit to the temporal proximity required . . . most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference.").

In opposition to Defendant's motion, Plaintiff cites to Mr. Wanner's September 9, 2020 comment to Success Academy's Chief Financial Officer, Cathy Jessup ("Ms. Jessup") after learning that Plaintiff and Ms. Elliott might need to take a leave of absence in the future. Specifically, Mr. Wanner forwarded an e-mail about Plaintiff and Ms. Elliott's upcoming leaves of absence and said "when it rains it pours," which Plaintiff baldly asserts is "as close to smoking gun evidence as a plaintiff can get in this kind of case." See Dkt. No. 36 at p. 16.

Plaintiff argues that Mr. Wanner made this comment because he would be short one AP coordinator during Defendant's busy season.  However, Plaintiff strategically cuts the quoted transcript in a transparent attempt to mischaracterize Mr. Wanner's testimony.  In fact, a review of the full deposition transcript demonstrates that Mr. Wanner was referring to the fact that he and Ms. Jessup would have to add Plaintiff and Ms. Elliott's potential leaves to the already long list of topics to discuss during their next one-on-one meeting – which happened to be taking place during the Controller Department's busy auditing season.  See Windholz Aff. Exhibit N at 47:15-51:22. This comment had nothing to do with Plaintiff or Ms. Elliott being absent during the Department's busy season.  In fact, Plaintiff's argument defies logic, since Mr. Wanner would have no incentive to terminate an employee during the busy season if he was going to be short-staffed at that time. Additionally, Mr. Wanner did not terminate Ms. Elliott, who also planned to be on leave.

---

[1] Plaintiff admits that around March 2020, she had "postponed" her surgery and that it was not scheduled for April 2020 at the time Mr. Wanner selected her for termination.  See DSOF at ¶ 18.

Plaintiff further argues that Mr. Wanner "all but admitted that he made the decision to terminate Plaintiff only after he received [Tanya] Jackson's September 9, 2020 email informing him that Plaintiff would be taking a 2-month leave for surgery." See Dkt. No. 36, at p. 15. This is yet another gross mischaracterization of Mr. Wanner's deposition testimony, however, in which Mr. Wanner specifically stated that he could not remember when he made the decision to terminate Plaintiff's employment effective October 1, 2020. See Windholz Aff. Exhibit N at 51:23-52:10.

Finally, Plaintiff argues that the timing of her termination is inconsistent with the reorganization plan drafted by Mr. Wanner in April 2020, since the vacant Payroll Associate position had not yet been filled. As explained above, Plaintiff's assertion that Success Academy could not terminate her employment without first filling that position is false, since that document specifically conditioned her termination on Mr. Smith returning to performing 100% of his accounts payable duties – which he did in Autumn 2020. See Wanner Decl. at ¶ 7. Furthermore, although not a prerequisite for the accounts payable termination, the open payroll position was filled just one month later, on November 4, 2020. Id. at ¶ 9.

Given these circumstances, Plaintiff's October 1, 2020 termination was therefore entirely consistent with the reorganization document prepared by Mr. Wanner six months earlier, and the fact that Plaintiff requested her leave during the execution of the April 2020 reorganization plan does not protect her from termination. See Morales v. City of New York, 2022 U.S. App. LEXIS 20112, at *5 (2d Cir. July 21, 2022) (affirming summary judgment because the temporal relationship between the plaintiff's protected conduct and his termination was "immaterial because an employer's decision to proceed along lines previously contemplated, though not yet definitely determined, is no evidence whatever of causality."); Hall v. Urban Assembly, Inc., 2022 U.S. Dist. LEXIS 314, at *8-9 (S.D.N.Y. Jan 3, 2022) (dismissing the plaintiff's FMLA retaliation claims

because "the evidence indicat[ed] that the wheels were already in motion to terminate" the plaintiff, and "that he may thereafter have engaged in protected activity by advising [his supervisor] of his intention to take additional medical leave d[id] not render the already-determined course unlawful.") (internal quotations and citations omitted); Ferguson v. Lander Co., 2008 U.S. Dist. LEXIS 26738, at *67 (N.D.N.Y Apr. 8, 2008) (granting summary judgment on the plaintiff's FMLA retaliation claim where the decision was made "much sooner . . . to target [the plaintiff] for termination – well before the filing of his FMLA leave request – and that the timing of the implementation was strictly the result of a desire to coordinate the termination of employment with the reductions in force planned for and ultimately effectuated . . . ").

### B. Ms. Holmes and Mr. Capani's Terminations Do Not Give Rise to an Inference of Discriminatory or Retaliatory Intent and are Entirely Unrelated to Plaintiff's Own Requested FMLA Leave.

In an attempt to suggest that her termination was based on her leave request, Plaintiff identifies two other individuals who were also terminated as part of the Controller Department reorganization – Shirell Holmes and Metin Capani. Specifically, Plaintiff attempts to draw comparisons between Ms. Holmes, Mr. Capani and herself, by broadly claiming that they were each terminated for taking FMLA leave or receiving an accommodation for a medical condition.

Noticeably absent from Plaintiff's brief and Counterstatement of Facts are any details whatsoever regarding the nature of Ms. Holmes and Mr. Capani's specific accommodations. Instead, Plaintiff generally asserts that Mr. Wanner was aware in April 2020 that Ms. Holmes "was utilizing intermittent leave." See Dkt. No. 36 at p. 10. Significantly, however, Plaintiff's contention that Ms. Holmes took an FMLA leave for a medical condition is simply untrue. In fact, Ms. Holmes specifically testified that she took an FMLA leave to care for her mother – not her own medical condition. See Windholz Aff. Exhibit M at 24:9-13. Moreover, Ms. Holmes further

testified that her intermittent leave ended in March 2020 – one month prior to Mr. Wanner even drafting the reorganization document and five months prior to her termination in August 2020.  Id. at 28:15-20.  Ms. Holmes' termination is therefore not indicative in any way of some sort of animus against employees who take FMLA leave or who have a medical condition.

Similarly, Plaintiff generally claims Mr. Capani "was being reasonably accommodated for a medical condition by being permitted to work from home on occasion."  See Dkt. No. 36 at p. 14.  It is nonsensical to suggest that Mr. Wanner would discriminate against Mr. Capani for a remote work accommodation when the entire organization – and indeed the entire country – was working from home as of March 2020 and continued working from home at the time of Mr. Capani's termination in August 2020.

Aside from generally stating that Ms. Holmes and Mr. Capani each received *some* accommodation at *some* point in time and were also terminated, Plaintiff fails to identify any other facts regarding each of their respective terminations that would indicate they were based on unlawful discriminatory or retaliatory animus.  Therefore, their terminations are irrelevant to the present action.  See Delaney v. Bank of Am. Corp., 908 F. Supp. 2d 498, 505 (S.D.N.Y. 2012), aff'd, 766 F.3d 163 (2d Cir. 2014) (holding that the termination of other members of the plaintiff's protected class did not support the discrimination claim where the plaintiff did not adduce evidence as to the circumstances of the terminations, including whether other employees were replaced by persons without the protected characteristic; or what the employer's stated justification was for terminating them).

Since Plaintiff fails to demonstrate that she was terminated *because of* her requested leave, her disparate treatment and retaliation claims fail as a matter of law.

**III.    Defendant is Entitled to Summary Judgment on Plaintiff's FMLA Interference Claim Because She Was Not an Eligible Employee Under that Statute.**

Plaintiff's interference claim appears as an afterthought in her Opposition Brief, in which she merely recites the legal framework and then baldly asserts that she "has adduced persuasive evidence that, had she not requested FMLA leave, she would not have been terminated when she was." See Dkt. No. 36 at p. 17.

Notably, Plaintiff fails to address the numerous cases cited by Defendant, which specifically hold that, where an employee's position is eliminated before or during her FMLA leave, she is no longer an "eligible employee" under that statute and is thus not entitled to such leave.  See Shimanova v. TheraCare of N.Y., Inc., 2017 U.S. Dist. LEXIS 35031, at *18-19 (S.D.N.Y. Mar. 10, 2017); Matias v. Montefiore Med. Ctr., 2022 U.S. Dist. LEXIS 172848, at *28 (S.D.N.Y. Sept. 23, 2022); Lacey-Manarel v. Mothers Work, Inc., 2002 U.S. Dist. LEXIS 5541, at *2 (S.D.N.Y. Mar. 29, 2002).  As explained above, it is undisputed that Plaintiff's termination was consistent with the April 2020 reorganization document.  Even if Plaintiff's termination was conditioned on filling the vacant Payroll Associate position (which it plainly was not), Plaintiff would nevertheless have been terminated as part of the reorganization during her leave of absence one month later on November 4, 2020.  Since Plaintiff was not an eligible employee at the time her FMLA leave was set to commence, her FMLA interference claim must also be dismissed.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court dismiss Plaintiff's claims with prejudice; and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.

Dated: March 23, 2023  By:  /s Diane Windholz
New York, New York       Diane Windholz
                         Laura Victorelli