UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAMEKA SIMMONS,

                Plaintiff,

– against –

SUCCESS ACADEMY CHARTER
SCHOOLS, INC.,

                Defendant.

**OPINION & ORDER**

21-cv-10367 (ER)

RAMOS, D.J.:

      Tameka Simmons,[1] a former employee of Success Academy Charter Schools, Inc. ("Success Academy"), brings this action pursuant to the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the Family and Medical Leave Act ("FMLA").[2] First Amended Complaint ("FAC"), Doc. 17 ¶¶ 31–35. In short, Simmons asserts that Success Academy unlawfully terminated her due to her disability, improperly denied her a reasonable accommodation of short-term leave, interfered with her right to take leave, and retaliated against her for asserting her rights.[3] *Id.*

      Before the Court is Success Academy's motion for summary judgment as to all claims. Doc. 29. For the reasons set forth below, the motion is GRANTED in PART and DENIED in PART.

---

[1] The Court notes that plaintiff's first name is spelled "Tameka" and "Tameeka" in several documents. *See, e.g.*, FAC ¶ 1; Compl. ¶ 1; Personnel File, Doc. 32-5 at 2. The Court here uses "Tameka" as the operative spelling, given that that is the spelling that appears in Simmons' personnel file.

[2] The FAC does not clearly delineate Simmons' individual causes of action or provide specific assertions in their support, aside from the incorporation of the initial paragraphs of the complaint. FAC ¶¶ 31–35. The Court reads the complaint to set out the following claims: (1) discriminatory termination, in violation of the ADA, NYSHRL, and NYCHRL; (2) failure to provide a reasonable accommodation, in violation of the ADA, NYSHRL, and NYCHRL; (3) retaliation in violation of the ADA, NYSHRL, and NYCHRL; (4) FMLA retaliation; and (5) FMLA interference. *Id.*

[3] In her opposition to Success Academy's motion for summary judgment, Simmons withdrew her claim for denial of a reasonable accommodation with respect to her request to wear sneakers in the workplace. Plaintiff's Memorandum of Law in Opposition, ("Mem. in Opp'n"), Doc. 36 at 18.

I.   BACKGROUND

A. Factual Background

Simmons began working at Success Academy in May 2016.[4]  Defendant's Rule 56.1 Facts Statement ("Def.'s 56.1 Statement"), Doc. 42 ¶ 1.  She was hired as an Accounts Payable ("AP") Coordinator in the Controller Department, where she was responsible for verifying transactions, maintaining electronic records, supporting accounting operations, and investigating accounting discrepancies.  *Id.* ¶¶ 1–2.

Simmons reported to AP Supervisor Shirell Holmes between May 2016 and August 2020.  *Id.* ¶ 3.  Thereafter, she reported to AP Supervisor Tanya Jackson until her termination in October 2020.[5]  *Id.* ¶ 4.

i.   Performance Reviews and Reorganization of Controller Department

All AP Coordinators, including Simmons, received annual performance reviews from the AP Supervisor and/or Controller.  *Id.* ¶ 7.  Simmons' 2017 performance review, which was completed in May 2017 by Fayerweather, indicated that she met expectations. Doc. 32-7 at 2.  Her 2018 review, which was completed in May 2018—also by Fayerweather—indicated that she performed below expectations, *id.* at 7, and her 2019 review, which was completed in May 2019 by Shirell Holmes, indicated that she met expectations, *id.* at 10–11.  Finally, Simmons' 2020 performance review, which was completed in May 2020 by Shirell Holmes, indicated that she performed below expectations.[6]  *Id.* at 17.

---

[4] The Court draws all undisputed facts from the parties' final Rule 56.1 Statement.  Def.'s 56.1 Statement.

[5] At Success Academy, AP Supervisors reported to the Controller, a position that was held by two different individuals during Simmons' tenure:  Linda Fayerweather between February 2017 and February 2019, and Peter Wanner beginning in January 2020.  *Id.* ¶ 5.

[6] As relevant here, the parties dispute the manner in which the 2020 rating came about.  Def.'s 56.1 Statement ¶ 8.  While Simmons accepts that she was rated "below expectations" in 2020, she contends that, "for 2020, Wanner directed Plaintiff's supervisor, Shirell Holmes, to give Plaintiff a 'Below Expectations' rating, despite [Holmes'] disagreement, and he did so after he had decided that Plaintiff would be terminated [] once an open Payroll position was filled."  *Id.*; *see also* Deposition of Shirell Holmes ("Holmes Dep."), Doc. 40-1 at 2, 14:12–25 (stating that Holmes believed Simmons deserved a rating of

Critically, other AP Coordinators received higher ratings than Simmons in 2018, 2019, and 2020. Specifically, Coordinator Evan Smith's 2018 evaluation indicated that he exceeded expectations, Doc. 32-9 at 2, his 2019 evaluation indicated the same, *id.* at 5, and his 2020 evaluation indicated that he met expectations, *id.* at 6. And Coordinator Ademola Elliott received a rating of "exceeds expectations" in 2019, Doc. 32-8 at 3, and "meets expectations" in 2020, *id.* at 4.[7]

In April 2020, shortly before the 2020 performance evaluations were issued, Success Academy began working on a plan to reorganize the Controller Department. Def.'s 56.1 Statement ¶¶ 22, 25; *see* Doc. 32-12. The plan contained several elements, including an employee assessment summary, an assessment regarding the current structure of the department, a plan for the future structure of the department, a timeline for changes, and an outline of risks. Doc. 32-12 at 2–9.

As relevant to this dispute, the employee assessment summary included an average rating for each employee. While Coordinators Smith and Elliot were rated "medium," Simmons' average rating was "low."[8] *Id.* at 4. And the plan for the future structure of the department indicated that "one low performing AP Coordinator" would be released, noting that it would be determined at a later point "whether this reduction can be made permanent based on a trial period with reduced headcount." *Id.* at 7. It

---

"meets expectations" for the 2020 evaluation year). In other words, Simmons contends that her 2020 evaluation and rating were not an accurate reflection of her performance. Success Academy counters that the record merely shows that Holmes believed that *all* of the AP Coordinators should have received higher ratings than Wanner directed her to give them during 2020. Def.'s 56.1 Statement ¶ 8.

[7] Elliot only received evaluations for 2019 and 2020. Def.'s 56.1 Statement ¶ 10.

[8] The parties dispute how these average ratings were calculated. According to Simmons, "[t]here is no evidence that Wanner relied on anything other than his own subjective views in making the personnel decisions reflected in the reorganization plan." Def.'s 56.1 Statement ¶ 24. Success Academy contends that the ratings were based on Wanner's observations and independent review, which was "consistent with Ms. Holmes and Ms. Fayerweather's observations over the prior several years – all identifying Plaintiff as the lowest-performing member of the AP Coordinator team." *Id.* The other employees rated "low" were Shirell Holmes, Metin Capani, and Aixia Berrios. Doc. 32-12 at 4. Unlike Simmons and Holmes, who were members of the AP team, Capani and Berrios were members of Success Academy's accounting team. *Id.*

further provided that the "new organization/structure" would be "announce[d]" to the team on July 16, and the "new organization" would be in place on August 15. *Id.* at 8.

The parties disagree about when, and under what conditions, the lowest-performing AP Coordinator was to be terminated. Def.'s 56.1 Statement ¶¶ 23, 27. Specifically, Simmons contends that this would only take place once an open Payroll position was filled, which did not actually take place until August 2021. *Id.* ¶ 23; *see also* Doc. 32-12 at 7 ("Once the open payroll position is filled, the AP Coordinator moves back 100% to AP and we can release the low performing AP Coordinator."). Success Academy denies that "the AP Coordinator position could *only* be eliminated once Success Academy filled the open payroll position. Rather, the Controller Department reorganization document specifically conditioned the elimination of the AP Coordinator position on another AP Coordinator moving back to performing 100% of his Accounts Payable duties in Autumn 2020." Def.'s 56.1 Statement ¶ 23; *see also* Doc. 33-12 at 5, 7–8 (indicating that, at the time the plan was drafted, one AP Coordinator was splitting time between AP and Payroll, and this would be the case until the open Payroll Specialist role was filled). Success Academy also underscores its position that "the open Payroll position was filled in November 2020 – just one month after Plaintiff's termination," contrary to Simmons' contentions. Def.'s 56.1 Statement ¶ 23; *see also* Declaration of Peter Wanner ("Wanner Decl."), Doc. 41 ¶¶ 5–11.

## ii. Simmons' Disability, Corresponding Requests, and Termination

Simmons began seeking treatment for her foot conditions[9] in April 2019, prior to Success Academy's reorganization process. Def.'s 56.1 Statement ¶ 11. At some point

---

[9] Simmons describes her "disabling medical condition," hallux valgus, as "painful bunions and hammertoe, which caused "substantial limitations in the major life activities of standing and walking." FAC ¶¶ 8, 9. A person has a "disability" under the ADA if she has: (1) a physical "impairment that substantially limits one or more [of her] major life activities," (2) "a record of such an impairment," or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include walking. 45 C.F.R. § 84.3(j)(2)(ii). Another court in this District recently noted that "[a] hallux valgus deformity is a 'very common pathological condition which commonly produces painful disability.'" *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 569 n.11 (S.D.N.Y. 2022) (citation omitted).

between April 2019 and March 2020, she informed Holmes that she was considering taking a leave of absence to have bilateral foot surgery related to her conditions. *Id.* ¶ 12. And in February 2020, while still considering her future surgery, Simmons submitted a doctor's note to Human Resources requesting an accommodation to wear sneakers.[10] *Id.* ¶ 13. The Director of Benefits, Tiffany Duncan, told Simmons that all accommodation requests needed to go through a third-party administrator called Unum. *Id.* ¶ 14. Simmons did not submit a request to Unum, as in March 2020, all Success Academy employers began working remotely due to the Covid-19 pandemic.[11] *Id.* ¶¶ 15–16.

Approximately six months later, on September 9, 2020, Simmons spoke to Tanya Jackson about taking a leave for surgery. *Id.* ¶ 19. Jackson encouraged Simmons to "take the time" because her health was important. *Id.* Jackson then emailed Wanner and another colleague, on September 9, 2020, about her conversation with Simmons. *See* Doc. 38-9. She stated the following:

> Tameka stated that she has to have surgery in October or November (no set date yet) and will need to be on leave for a total of 4-8 weeks.
>
> [Elliot] stated that she also needs to have a procedure done in December but will only need 1 week off.
>
> Just giving you a heads up.
>
> Maybe if possible, we can get a temp in for the 2 months that Tameka will be off. Just an idea.

*Id.* at 2. The same day, Wanner forwarded Jackson's email to Success Academy CFO Cathy Jessup, adding the following:

> Cathy – FYI. When it rains it pours.
>
> We can discuss during 1:1

---

[10] As noted above, Simmons withdrew her claim for failure to accommodate this request. Def.'s 56.1 Statement ¶ 13.

[11] The parties agree that Simmons' foot surgery had not been scheduled as of March 2020. Def.'s 56.1 Statement ¶ 17. Plaintiff "believed that it would likely occur in April 2020." *Id.*; *see also* Deposition of Tameka Simmons ("Simmons Dep."), Doc. 38-17 at 9, 195:11–196:25 (stating that the surgery was not scheduled, but Simmons had discussed April 2020 as a possible time for the surgery).

*Id.*[12]

Several days later, on September 11, 2020, Simmons formally requested to take leave between October 16, 2020, and December 16, 2020. Doc. 32-10 at 3. She completed FMLA paperwork and submitted it through Unum the same day. Def.'s 56.1 Statement ¶ 20. On September 15, 2020, Unum notified Simmons that she was "eligible for FMLA" as of the date of her request. Doc. 38-14 at 3.

Success Academy then terminated Simmons on October 1, 2020.[13] Def.'s 56.1 Statement ¶ 28. According to Success Academy, her termination was a product of the Controller Department reorganization. *Id.* However, Simmons contends that she was terminated because she requested leave three weeks earlier. *Id.* She asserts that "[a]ll three employees whom Wanner selected for termination as part of his 'reorganization' plan had either been using FMLA leave (Holmes), indicated that they would imminently need to use FMLA leave (Plaintiff), or had a reasonable accommodation for a known medical condition (Capani)."[14] *Id.* ¶ 27. While Success Academy admits that the other

---

[12] The parties dispute what Wanner meant when he said that "[w]hen it rains it pours." *See* Defendants' Reply ("Def.'s Reply"), Doc. 39 at 9. During Wanner's deposition, he provided some context. When asked what he meant, he first stated that "September is our peak season where we have our annual audit where they had a couple of issues to tackle and so there were just other items I needed to put on the agenda." Deposition of Peter Wanner ("Wanner Dep."), Doc. 40-2 at 8, 47:15–47:21. He then stated that he wrote that statement "Because we have other issues as well to deal [with] during the peak season." *Id.* at 10:18–10:19. Wanner was thereafter asked "So when you wrote, 'When it rains it pours,' you were referring to the fact that it was a very busy time and you would be short one AP coordinator to meet the requirements of the time, correct?" *Id.* at 11:19–11:23. He answered "Yes, but the comment was more referred [towards the fact that] now we ha[d] another topic to be discussed in very difficult times during the audit season." *Id.* at 11:25–12:4.

[13] When Wanner was asked who made the decision to terminate Simmons, he stated that "This was the decision made then[,] around that time frame[,] it was then Cathy [Jessup] and myself at that point." Wanner Dep. at 12, 51:25–52:3. He was then asked whether he "ma[de] the decision when [he] met with Ms. Jessup in the one-to-one meeting that [he] reference[d] in [his] email [on] September 9th," to which Wanner answered that he did not remember. *Id.* at 13–15, 52:6–53:10.

[14] Holmes and Capani were terminated around August 2020. Wanner Dep. at 4, 30:5–30:14.

employees had indeed previously taken FMLA leave or sought an accommodation, it denies that their termination had anything to do with those circumstances.[15]  *Id.*

### B. Procedural History

Simmons filed the complaint on December 6, 2021.  Compl.  Success Academy answered on February 4, 2022.  Doc. 11.  The Court referred the parties to mediation, Doc. 13; however, on April 12, 2022, the Court was informed that mediation was unsuccessful in resolving any issue in the case, Doc. 14.

The Court then held an initial pretrial conference and approved the parties' proposed discovery plan and scheduling order on May 6, 2022.  Min. Entry dated May 6, 2022; *see also* Doc. 19.  Simmons thereafter amended the complaint, Doc. 17, and Success Academy answered, Doc. 18.  The parties then proceeded to discovery.

The Court subsequently held a case management conference on December 15, 2022.[16]  Min. Entry dated Dec. 15, 2022.  During the conference, the parties indicated that they may be amenable to settlement, *id.*; however, on December 16, 2022, Success Academy informed the Court that it did not wish to engage in further settlement discussions and requested permission to file a motion for summary judgment instead, Doc. 25.  The Court granted the request and set a briefing schedule, Doc. 26, and the motion was fully briefed on March 28, 2023, Doc. 47.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467

---

[15] Success Academy points out that Holmes returned from leave in March 2020, at least one month before Wanner put together the reorganization plan, and at least six months before Holmes was terminated.  Def.'s 56.1 Statement ¶ 27.

[16] Ahead of the scheduled case management conference, Success Academy filed a letter requesting leave to move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Doc. 24.

(S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)) (internal quotation marks omitted).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

In cases based on allegations of discriminatory retaliation, courts use "an extra measure of caution" in considering summary judgment motions "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence."  *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006).

### III. DISCUSSION

Simmons alleges that Success Academy terminated her because of her disability, improperly denied her request for leave for a period of eight weeks at the end of 2020, and retaliated against her for requesting leave. FAC ¶¶ 20, 32–33. She also raises FMLA-specific allegations, claiming that Success Academy violated the FMLA by both retaliating against her for exercising her FMLA rights and interfering with her exercise of those rights. *Id.* ¶ 34. The Court takes Simmons' arguments in turn.

#### A. Discrimination Allegations

##### i. Disparate Treatment

The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to . . . discharge of employees . . . ." 42 U.S.C. § 12112(a). "Claims alleging such discrimination are subject to the prima facie case framework elaborated by the Supreme Court" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 766 (2d Cir. 2015); *see also Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015). "Under this framework, if a plaintiff can show (1) that she is a member of a protected class, (2) that she was qualified for employment in the position, (3) that she suffered an adverse employment action, and (4) that there is some minimal evidence supporting an inference that her employer acted with discriminatory motivation, such a showing will raise a temporary presumption of discriminatory motivation." *Dawson*, 624 F. App'x at 766; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993). If a plaintiff meets her minimal *prima facie* burden and obtains the temporary presumption of discriminatory intent, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Dawson*, 624 F. App'x at 766; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). If the employer articulates such a reason, the

burden then shifts back to the employee to show that the employer's reason was pretext. *Dawson*, 624 F. App'x at 766; *Vega*, 801 F.3d at 83.

Similarly, the NYSHRL and the NYCHRL prohibit disability-based discrimination. *See Jacobsen v. N.Y.C. Health and Hosps. Corp.*, 11 N.E.3d 159, 166–167 (N.Y. 2014) ("Turning . . . to the substance of the statutes at issue, the State HRL forbids employment discrimination on the basis of an employee's disability, and the City HRL provides even greater protection against disability-based discrimination[.]") (citations omitted). A *prima facie* case of discrimination is made "under both the State HRL and City HRL if the employee suffers from a statutorily defined disability," and the disability was the basis for the termination. *Id.* at 166.

The Court grants Success Academy's motion as to Simmons' allegation that she was terminated *because of* her foot condition. FAC ¶ 32. The record contains no evidence that Success Academy maintained any discriminatory animus toward her due to her hallux valgus diagnosis. As Success Academy points out, it was well aware of the diagnosis long before Simmons' termination, at least as of April 2019. Defendant's Memorandum of Law in Support ("Mem. in Supp."), Doc. 30 at 13 ("It is nonsensical to suggest that Success Academy would suddenly develop some sort of vague discriminatory animus against Plaintiff because of her bunions and hammertoes ***more than a year after she disclosed them*** to her supervisors.") (citation omitted) (emphasis in original). And there is no evidence suggesting that Success Academy developed or maintained a discriminatory motivation for her termination following her disclosure.

Critically, the record shows that as of at least one year before Simmons told Success Academy about her foot condition, her performance began to fall below expectations—and, in particular, her performance was consistently rated lower than her counterparts. *See generally* Doc. 32-7 at 2–17; Doc. 32-8 at 3; Doc. 32-9 at 2. The record also shows that Simmons was identified as the low-performing AP Coordinator that would eventually be terminated pursuant to Success Academy's reorganization of the

Controller Department—even though the parties disagree as to the precise timing anticipated for her termination. Def.'s 56.1 Statement ¶¶ 22–27.

Given these circumstances—specifically, the lack of evidence of intolerance or prejudice toward Simmons' disability, the significant length of time between Simmons' disclosure and her termination, and the records showing that Simmons' performance began to fall below expectations long before her disclosure, thus leading to her identification as the AP Coordinator that would eventually be terminated—no reasonable jury could conclude that Simmons was terminated *because of* Success Academy's discriminatory animus toward her disability. Accordingly, summary judgment is granted as to that claim.

### ii. Failure to Provide Leave as Reasonable Accommodation[17]

Failure to provide reasonable accommodations[18] for disabled employees may also constitute discrimination. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008); 42 U.S.C. § 12112(b)(5). Under the ADA, the NYSHRL, and the NYCHRL, an employer is required to afford reasonable accommodation of an employee's known disability unless the accommodation would impose an undue hardship on the employer.[19]

---

[17] As articulated above, the FAC does not clearly delineate Simmons' causes of action, and, as relevant here, the reasonable accommodation allegation tied to Simmons' leave request is particularly imprecise. FAC ¶ 33 ("In terminating Plaintiff because of her request for the reasonable accommodation of short-term leave, Defendant violated [the ADA, the NYSHRL, and the NYCHRL]."). Indeed, the allegation could be construed as two separate claims, one for failure to provide a reasonable accommodation and one for retaliation, or simply as a retaliation claim. The Court considers the reasonable accommodation claim here given that Simmons addressed it in her opposition, Mem. in Opp'n at 18–19, and Success Academy did not subsequently object, *see generally* Def.'s Reply.

[18] A reasonable accommodation is one that "gives the otherwise qualified plaintiff with disabilities meaningful access to the program or services sought." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 282 (2d Cir. 2003). "Nevertheless, a 'reasonable accommodation' cannot 'mean elimination of any of the job's essential functions.'" *Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 33 (2d Cir. 2019) (quoting *Gilbert v. Frank*, 949 F.2d 637, 644 (2d Cir. 1991)).

[19] The NYSHRL defines "disability" more broadly than the ADA, *Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002), and the NYCHRL defines both "disability" and "reasonable accommodation" more broadly than either the ADA or the NYSHRL. *See Nieblas-Love*, 165 F. Supp. 3d at 73–74 (citations omitted); *Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 416 (S.D.N.Y. 2014). However, those broader definitions are not at issue here, given that Success Academy does not dispute that Simmons' condition qualifies as a disability under the ADA. *See generally* Mem. in Supp.; Def.'s Reply.

*Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (citing 42 U.S.C. § 12112(b)(5)(A); N.Y. Exec. L. 296(3)(a)); *Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 412 (S.D.N.Y. 2014) (citing N.Y.C. Admin. Code §§ 8–107(15)(a), 8–102(18)).

To state a *prima facie* case based on discrimination for failure to accommodate, a plaintiff employee must establish by a preponderance of the evidence that: (1) she is disabled; (2) her employer is a covered entity; (3) she could perform the essential functions of his job with an accommodation; and (4) the defendant refused to provide such an accommodation despite being on notice. *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73 (2d Cir. 2019) (quoting *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96–97 (2d Cir. 2009)); *see also Noll*, 787 F.3d at 94 (ADA and NYSHRL); *Snowden v. Trustees of Columbia Univ.*, 612 F. App'x. 7, 10 (2d Cir. 2015) (summary order) (NYCHRL).

A leave of absence "may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work." *Graves v. Finch Pruyn & Co., Inc.* 457 F.3d 181, 186 n.6 (2d Cir. 2006); *Wenc v. New London Bd. of Educ.*, 703 F. App'x 27, 30 (2d Cir. 2017) ("[W]e have not squarely addressed in a published opinion when a medical leave may constitute a 'reasonable accommodation' under the ADA[.]") (citing *Graves*, 457 F.3d at 185). However, the Second Circuit has not "squarely articulated when, if ever, a leave of absence for a finite period might qualify as reasonable accommodation." *Torres v., New York City Dep't of Education*, No. 21-1679, 2022 WL 16954360, at *2 n.2 (2d Cir. Nov. 16, 2022) (summary order).

The Court denies the motion for summary judgment as to Simmons' claim that Success Academy failed to provide her with the reasonable accommodation of short-term leave. FAC ¶ 33. Indeed, given the discrepancies in the record, a reasonable jury could conclude that: (1) the precise timing of her termination pursuant to the reorganization plan had not yet been defined when she submitted her request on September 11, 2020, and (2) Success Academy's decision to terminate Simmons on October 1, 2020,

constituted an improper denial of her request for leave. *See* Def.'s 56.1 Statement ¶¶ 23, 27. That is because the record does not definitively show that Success Academy had decided to terminate Simmons on October 1, 2020, *before* she formally requested to take leave. Indeed, when directly asked when the decision to terminate Simmons on October 1, 2020, was made, Wanner answered that it happened around the "timeframe" of his one-on-one meeting with CFO Jessup in September 2020, but he stated that he could not actually remember. *See* Wanner Dep. at 12, 50:9–51:10. The September 9, 2020, email correspondence between Jackson and Wanner could support such a conclusion as well, particularly given that Jackson suggested that the team find someone to temporarily fill Simmons' position during the period of her anticipated leave. Doc. 38-9 at 2 (stating on September 9, 2020, that "Maybe if possible, we can get a temp in for the 2 months that Tameka will be off."). Additionally, while two of the individuals identified for termination pursuant to the reorganization plan were terminated in August 2020, Simmons was not terminated at that point. *See* Wanner Dep. at 4, 30:5–30:17. Accordingly, a jury could conclude that Simmons' termination amounted to an improper denial of her reasonable accommodation request.

To be sure, a jury could also conclude the contrary on several theories supported by the record. For example, it could determine that the requested leave would impose an undue hardship on Success Academy given the timing of the request, *Noll*, 787 F.3d at 94, or it could find, based on its evaluation of the record and testimony proffered at trial, that the request was not sufficiently finite, *Graves*, 457 F.3d at 186 n.6, or would otherwise cause an elimination of her job's essential functions, *Morey*, 794 F. App'x at 33. At this stage of the proceedings, however, it is not the Court's duty to evaluate the evidence, but rather to consider whether a jury *could* find in Simmons' favor at trial based on the evidence now before it. Given the Court's obligation to view the evidence in the light most favorable to Simmons at this juncture, *Brod*, 653 F.3d at 164, and its conclusion that genuine disputes of material fact remain, *Senno v*, 812 F. Supp. 2d at 467, Success

Academy's motion is denied as to Simmons' remaining reasonable accommodation claim.

### B.  FMLA Interference

Simmons also argues that Success Academy interfered with the exercise of her FMLA rights.  FAC ¶ 34.

The FMLA provides that employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the statute.  29 U.S.C. § 2615(a)(1).  To this end, "[t]he FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights."  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (citing *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724–25 (2003)).

In order to state a *prima facie* case for interference under the FMLA, Simmons must establish:  (1) that she was an eligible employee under the FMLA; (2) that Success Academy is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to Success Academy of her intention to take leave; and (5) that Success Academy denied or otherwise interfered with benefits to which she was entitled under the FMLA.  *Graziadio v. Culinary Institute of America*, 817 F.3d 415, 424 (2d Cir. 2016).

Success Academy's motion is also denied as to Simmons' FMLA interference claim.  As of September 11, 2020, when she submitted her FMLA paperwork, Simmons was an FMLA-eligible employee, and Success Academy was an employer as defined by the statute.  *See* Mem. in Supp. at 18; *see also* Doc. 38-14 at 3 (notifying Simmons on September 15, 2020, that she was eligible for FMLA leave as of the date of her request, September 11, 2020).  It is also undisputed that she gave notice of her intention to take

leave on September 11, 2020.  *Id.*  Additionally, and importantly here, a reasonable jury could conclude that Success Academy interfered with a benefit to which Simmons was entitled under the FMLA, namely, medical leave to undergo and recover from foot surgery.  Indeed, Simmons had continuously worked at Success Academy for a period of four years at the time of her request, and she had not been terminated—nor is there evidence showing that her termination date pursuant to the reorganization plan had been determined—*at that point*.  *See* Mem. in Supp. at 18.

Notwithstanding these circumstances, Success Academy argues that Simmons "cannot establish the third and fifth elements of the *prima facie* case of FMLA interference because she was not an eligible employee under the statute and was thus not entitled to take FMLA leave" due to her subsequent termination.  *Id.*  In support of this contention, Success Academy references an FMLA regulation which provides that if "an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave . . . cease[s] at the time the employee is laid off."  *Id.* (citing 29 C.F.R. § 825.216); *see also Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141, 162 (S.D.N.Y. 2011) (noting that in the reinstatement context, "it is well-settled that an employer is not liable for 'interfering' with an employee's leave when the employee would have been terminated regardless of the leave.").  However, a close read of the cited regulation makes clear that it refers to limitations on an employee's right to the *reinstatement* of her employment *after a period of leave*, rather than an employer's obligations at the time that an employee *requests* leave.  29 C.F.R. § 825.216.  In other words, the cited regulation stands for the proposition that an employer can stop providing benefits *during* an employee's leave period if it shows that the employee "would have been laid off during the FMLA leave period," not that an employer may freely terminate an eligible employee who has requested leave *ex ante*.  *Id.*

15

Contrary to Success Academy's contentions, the evidence does not "clearly demonstrate[]" that its decision to terminate Simmons *on October 1, 2020*, was due solely to its reorganization of the Controller Department, rather than a combination of that reorganization *and* Simmons' request to take eight weeks of FMLA leave. Mem. in Supp. at 18. To the contrary, the record raises genuine disputes as to whether Simmons' employment may have continued through the end of 2020 absent her request for leave. *See also* Wanner Dep. at 12, 51:9–52:10; Doc. 38-9 at 2.

Importantly, each of the cases that Success Academy cites in support of its contentions can be distinguished. In *Shimanova v. TheraCare of New York, Inc.*, No. 15 Civ. 6250 (LGS), 2017 WL 980342, at *7 (S.D.N.Y. Mar. 10, 2017), for example, the Court considered a plaintiff's interference claim as related to her *reinstatement after* having been approved for and taken a period of leave. The Court underscored that the "undisputed facts show[ed] that [p]laintiff's position was eliminated [during her leave], that she never applied for a new position with [the defendant], and that [the defendant] terminated her employment on December 5, 2013." *Id.* Because the undisputed facts showed that the case fell within the reinstatement exception laid out in 29 C.F.R. § 825.216, the Court granted the defendant's summary judgment motion. *Id.*

That is not the case here. The record before the Court certainly suggests that Simmons was to be terminated at some point after the reorganization plan was put in place in April 2020. However, the record does not indisputably show that Simmons would have been terminated in regular course *on October 1, 2020*, absent her request for leave. As Simmons points out, a reasonable jury "may conclude that Plaintiff's FMLA leave request was a 'negative factor' in Defendant's decision to terminate her *at the time it made the decision*, and thus Defendant 'prevented her ability to exercise rights under the FMLA.'" Mem. in Opp'n at 17 (citing *Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 168 (2d Cir. 2017)) (emphasis in original). The jury could thus conclude that "[u]nlike the case cited by Defendant, Plaintiff has adduced persuasive

evidence that, had she not requested FMLA leave, she would not have been terminated when she was." *Id.*

For these reasons, the Court denies Success Academy's motion for summary judgment as to Simmons' FMLA interference allegation. FAC ¶ 34.

### C. Retaliation Allegations

Simmons also argues that Success Academy improperly retaliated against her due to her request to take medical leave. FAC ¶¶ 33, 34.

"Claims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). To state a *prima facie* case of retaliation in the employment context, a plaintiff must show: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *McMenemy v. City of Rochester*, 241 F.3d 279, 282–83 (2d Cir. 2001). Requesting a reasonable accommodation is a protected activity under the ADA. *Morey*, 794 F. App'x at 33 (citing *Weixel v. Bd. Of Educ. Of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002)).

As relevant here, the FMLA also provides relief where employees are "subjected to some adverse employment action by the employer" after "actually exercising [their] rights or opposing perceived unlawful conduct under the FMLA." *Woods*, 864 F.3d 158, 166 (2d Cir. 2017).

The Court denies Success Academy's motion for summary judgment as to Simmons' retaliation allegations. As stated above, while the record does not support the conclusion that Simmons was terminated *solely* on the basis of her disability and Success Academy's related animus, a reasonable jury could conclude that she was terminated at

17

the beginning of October 2020 due to, among other things, the steps she took to assert her right to address those conditions:  namely, requesting time off for surgery.

While Success Academy claims that Simmons' termination was "[w]holly" unrelated to her leave request, genuine disputes of material fact remain as to this issue. Mem. in Supp. at 19.  As noted above, despite the fact that Simmons was identified as the lowest performing AP Coordinator as of May 2020, the record does not clarify whether Simmons' termination date was solidified as of the day when she requested leave in September 2020.  A jury could conclude that at least one of her superiors anticipated that she might still be employed in December 2020.  Doc. 38-9 at 2 (noting Simmons' request and suggesting that a temporary worker could fill her roll during her absence).  That there was an additional, "non-retaliatory reason" for Simmons' eventual termination does not doom Simmons' retaliation allegations.  Mem. in Supp. at 21.  A jury could well find that the assertion of her FMLA rights was one of several reasons for Success Academy's decision to terminate her when it did; indeed, a finding of a causal connection between Simmons' assertion of her rights on September 9 and September 11, 2020,[20] and her termination shortly thereafter on October 1, 2020, is supported by the record in this case. *See Holcomb v. Iona College*, 521 F.3d 130, 142 (2d Cir. 2008) ("A plaintiff alleging that an employment decision was motivated both by legitimate and illegitimate reasons may establish that the 'impermissible factor was a motivating factor, without proving that the employer's preferred explanation was not some part of the employer's motivation.'") (citations omitted); *cf. Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989) ("An employer may not, in other words, prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it *at the time of the decision*.") (emphasis added).

---

[20] September 9, 2020, is when Simmons first informally advised Jackson that she would be taking leave to have the surgery; September 11, 2020, is when she submitted the formal request of FMLA leave through Unum.  Def.'s Rule 56.1 Statement ¶¶ 19–20.

18

For all these reasons, Success Academy's motion is denied as to Simmons' retaliation claims.[21]

## IV. CONCLUSION

For the foregoing reasons, Success Academy's motion for summary judgment is GRANTED in PART and DENIED in PART. Specifically, the motion is GRANTED as to Simmons' claim that she was terminated because of her disability. FAC ¶ 32. The motion is DENIED as to Simmons' reasonable accommodation, interference, and retaliation claims. *Id.* ¶¶ 33, 34.

The parties are directed to appear for a telephonic status conference at 10:00 A.M. on May 24, 2023. The parties are directed to dial (877) 411-9748 and enter access code 3029857#.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 29.

It is SO ORDERED.

Dated:   May 8, 2023
         New York, New York

EDGARDO RAMOS, U.S.D.J.

---

[21] Given the Court's conclusion that Simmons' federal allegations should be considered by a jury, summary judgment is also inappropriate as to her state law claims. Indeed, the NYCHRL retaliation inquiry "is broader than its federal counterpart," *Barry v. Macy's, Inc.*, No. 20 Civ. 10692 (CM), 2022 WL 1104847, at *9 (S.D.N.Y. Apr. 13, 2022) (internal quotation marks and citation omitted), and the federal standard serves as "a floor" below which applications of the NYCHRL cannot fall, *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 410 (2d Cir. 2015) (citation omitted). In other words, for all the reasons stated herein, a reasonable factfinder could also find in favor of Simmons as to her state and city retaliation claims.